Nos. 13-3264, 14-2591
Consolidated with Nos. 13-3462 and 14-2602
Cross Appeal No. 14-2495

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

---

IN RE:
SOUTHWEST AIRLINES VOUCHER LITIGATION

ADAM J. LEVITT and HERBERT C. MALONE,
individually and on behalf of all other similarly situated,
Plaintiffs-Appellees,
Cross-Appellants,

v.

SOUTHWEST AIRLINES COMPANY,
Defendant-Appellant,
Cross-Appellee.

APPEALS OF: GREGORY MARKOW and ALISON PAUL,
Objectors-Appellants,
Cross-Appellees.

---

On Appeals from the United States District Court for the Northern District of Illinois,
No. 1:11-cv-08176, Trial Judge Matthew F. Kennelly

---

Petition for Rehearing and Rehearing En Banc of
Appellant Gregory Markow

---

CENTER FOR CLASS ACTION FAIRNESS
Theodore H. Frank
Melissa A. Holyoak
1718 M Street NW, No. 236
Washington, D.C. 20036
(703) 203-3848
*Attorneys for Appellant Gregory Markow*

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 13-3264, 14-2591

Short Caption: In re Southwest Airlines Voucher Litigation

   To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

   The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

[   ]   **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH  INFORMATION IS NEW OR REVISED.**

(1)  The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

   Gregory Markow

(2)  The names of all law firms whose partners or associates have appeared for the party in the case (including  proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

   Center for Class Action Fairness

   Williams Montgomery & John  (district court local counsel)

(3)  If the party or amicus is a corporation:

   i)  Identify all its parent corporations, if any; and

      N/A

   ii) list any publicly held company that owns 10% or more of the party's or amicus' stock:

      N/A

Attorney's Signature:  s/ Theodore H. Frank            Date: 8/24/2015

Attorney's Printed Name:  Theodore H. Frank

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   **Yes** X   **No** _____

Address:  1718 M Street NW No. 236

      Washington, DC 20036

Phone Number:  (703)203-3848            Fax Number:

E-Mail Address:  tfrank@gmail.com

rev. 01/15 GA

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: <u>13-3264, 14-2591</u>

Short Caption: <u>In re Southwest Airlines Voucher Litigation</u>

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

**[  ]    PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)  The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

<u>Gregory Markow</u>

(2)  The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

<u>Center for Class Action Fairness</u>

<u>Williams Montgomery & John  (district court local counsel)</u>

(3)  If the party or amicus is a corporation:

i)  Identify all its parent corporations, if any; and

<u>N/A</u>

ii) list any publicly held company that owns 10% or more of the party's or amicus' stock:

<u>N/A</u>

Attorney's Signature: <u>s/  Melissa A. Holyoak</u>    Date: <u>8/24/2015</u>

Attorney's Printed Name: <u>Melissa A. Holyoak</u>

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    **Yes** _____    **No** ☒

Address: <u>1718 M Street NW No. 236</u>

<u>Washington, DC 20036</u>

Phone Number: <u>573-823-5377</u>    Fax Number: _____

E-Mail Address: <u>melissaholyoak@gmail.com</u>

rev. 01/15 GA

## Table of Contents

Rule 26.1 Statement ........................................................................................... i

Table of Contents ............................................................................................ iii

Table of Authorities ........................................................................................ iv

FRAP 35(b)(1) Statement ................................................................................ 1

Background ....................................................................................................... 2

Argument .......................................................................................................... 4

I.     The holding that the class received "full compensation" is an error of either fact or law, and conflicts with Seventh Circuit holdings. ................................ 4

II.    The panel's holding that the class was not prejudiced by the reversion of over $1.3 million to Southwest is erroneous and conflicts with Seventh Circuit law. ....................................................................................... 9

III.   The panel's premise that "Southwest had no incentive to insist on a stringent claims process" is unsupported by the record and contradicts common sense. ...................................................................................... 12

Conclusion ..................................................................................................... 14

Certificate of Compliance  with Fed. R. App. 32(a)(7)(C) ...................... 16

Proof of Service.............................................................................................. 17

# Table of Authorities

Cases

*In re Baby Prods Antitrust Litig.,*
    708 F.3d 163 (3d Cir. 2013) ............................................................6

*In re Dry Max Pampers Litig.,*
    724 F.3d 713 (6th Cir. 2013) ...........................................................7

*Eubank v. Pella Corp.,*
    753 F.3d 718 (7th Cir. 2014) .................................................. *passim*

*Ira Holtzman, C.P.A., & Assocs. v. Turza,*
    728 F.3d 682 (7th Cir. 2013) ..........................................................11

*In re MagSafe Apple Power Adapter Litig.,*
    571 Fed. Appx. 560 (9th Cir. 2014) ................................................6

*Pearson v. NBTY, Inc.,*
    772 F. 3d 778 (7th Cir. 2014) .................................................. *passim*

*Redman v. RadioShack Corp.,*
    768 F.3d 622 (7th Cir. 2014) .................................................. *passim*

Rules and Statutes

28 U.S.C. § 1712(b) .............................................................................7

28 U.S.C. § 2042 ..............................................................................11

Fed. R. App. Proc. 35(b)(1) .................................................................1

Fed. R. Civ. Proc. 23(e) ......................................................7, 9, 11, 14

Fed. R. Civ. Proc. 23(h) ...............................................................1-2, 9

Other Authorities

Lavie, Shay,
    *Reverse Sampling: Holding Lotteries to Allocate the Proceeds of Small-Claims
    Class Actions*, 79 GWU L. REV. 1065 (2011) .................................................................11

**FRAP 35(b)(1) Statement**

The panel decision conflicts with this Court's decisions in *Pearson v. NBTY, Inc.*, 772 F.3d 778 (7th Cir. 2014); *Redman v. RadioShack, Inc.*, 768 F.3d 622 (7th Cir. 2014); and *Eubank v. Pella Corp.*, 753 F.3d 718 (7th Cir. 2014), and consideration by the full court is necessary to secure and maintain uniformity of the Court's decisions.

Below and on appeal, Gregory Markow objected to the *allocation* of a settlement that would provide clear sailing of $3 million in a segregated fund to be split between class counsel and Southwest Airlines, while the class would be permitted to claim coupons. Markow complained that, given the nature of the claims process, class counsel would be the primary beneficiary of the settlement, and that this disproportion made the settlement unfair self-dealing, whether or not the total class relief was adequate and whether or not there was explicit collusion. The district court approved the settlement without making any effort to determine the value of the class relief (the parties did not disclose the 8.6% claims rate until after Markow filed his opening brief on appeal) or addressing the allocation issue. This contradicts *Redman*, which rejected a challenge to the adequacy of the settlement, but nonetheless held the settlement unfair because, like here, class counsel was the primary beneficiary of the settlement. 768 F.3d at 632. *Accord Pearson*, 772 F.3d at 782. Yet the panel here affirmed settlement approval because the "essentially complete relief" for class members who filed claims "is the model of an adequate settlement." Slip op. 17-20.[1] This legal conclusion that the settlement "makes the class whole" (slip op. 21) conflicts with Seventh Circuit law that it is the actual value, not the "fiction" of potential value, that matters. *Pearson*, 772 F.3d at 780-81.

Separately, the settlement's "questionable provisions" of clear sailing and a segregated fund meant that when the district court reduced class counsel's $3M Rule

---

[1] "Slip op." refers to the panel decision. "Axyz" refers to page xyz of Markow's appendix. "Rxyz" refers to page xyz of the record in Appeal No. 14-2602.

23(h) request to $1.67M because of Markow's objections, the excess $1.33M reverted to Southwest instead of the class. *Eubank*, 753 F.3d at 723. The district court refused to delete the kicker in this case; indeed, it did not consider the specific provisions at all in its opinion. This is by itself reversible error running afoul of *Redman*'s command that a kicker in conjunction with clear sailing should receive "intense critical scrutiny by the district court." 768 F.3d at 637. But the panel affirmed settlement approval because the "settlement makes the class whole" and "it is hard to imagine the class receiving any better result." Slip op. 20-21. *Eubank* does not find it hard to imagine a better result: the $1.33 million extra Southwest was willing to pay to settle the case than it actually had to pay could have been "added to the compensation of the class" but for the fact that the district court "refused to delete" the kicker. 753 F.3d at 723. (The panel further reduced the fee award and incentive award another $30,000. Slip op. 28. This sanction for failure to disclose a conflict of interest to the court or the class will also go to Southwest.) If clear-sailing/segregated-fund provisions are not problematic when a district court fails to consider them and where the breach of class counsel's fiduciary duty actually costs the class $1.36 million, what teeth does Seventh Circuit criticism of these clauses have?

## Background

Passengers who purchased premium-priced Business Select tickets from Southwest received coupons for a free $5 alcoholic drink aboard a flight; in 2011, Southwest stopped honoring old drink coupons, and only honored new coupons that were redeemed before an expiration date. R2. In 2011, two plaintiffs filed a class complaint alleging Southwest had breached its contractual obligations, was unjustly enriched, and had violated state consumer fraud laws. R7-10. Plaintiffs maintained that the drink coupons had no expiration date at the time of issuance, and thus should have been honored indefinitely. R1-2. They sought money damages in the form of

compensatory damages, punitive damages, actual damages, treble damages, statutory damages, disgorgement, restitution, and interest. R10; R146-48.

The parties settled in late 2012. The settlement provides no monetary relief; rather, class members may claim a coupon for a beverage on a Southwest Airlines flight by submitting a form along with supporting documentation. A113-15. Class members' deadline to make claims was September 2, 2013, months after the April fairness hearing. A97. The coupons were transferable, but expired after one year. A101; R1014. The parties separately agreed for class counsel to seek $3 million in unopposed "clear-sailing" fees. A125. This amount was segregated from class relief, so that any reduction from that request would benefit only the defendant, not the class. *Id.*

Class counsel repeatedly represented that the class had been deprived of at least 5.8 million $5 drink coupons, and that the settlement was worth that much because it made 5.8 million $5 drink coupons "available" to the class, entitling them to $3 million in fees. *E.g.,* R517; R524; R713; R720; R1878. Markow, represented by the non-profit Center for Class Action Fairness, objected. A128-A154. *Inter alia,* Markow objected that class counsel was exaggerating the actual value of the settlement to the class, as the vast majority of available coupons would go unclaimed and unredeemed; furthermore, because coupons were freely available on the market for much less than $5, they were not worth $5 each; the settlement as structured would lead to disproportionate relief to the attorneys relative to the class, a problem compounded by the combination of clear-sailing and reversion clauses that shielded those excessive fees from scrutiny and precluded the class from benefiting from an appropriate reallocation. A137-A145. The settling parties insisted that the number of coupons the class actually claimed was irrelevant, and refused to disclose that information. R994-95.

The district court issued its Final Approval Order before the claims deadline passed, approving the settlement. A1. In awarding fees, the court recognized that "it is unlikely that a particular high percentage of the vouchers actually will be used, or even

claimed," but it did not require the parties to submit the available claim rates onto the record, and used that finding solely for analysis of the fee award. A46. After a Rule 59 motion by plaintiffs, the court awarded a total of $1.67 million to class counsel. A60. The district court never addressed the reversion clause, and the excess $1.33 million that Southwest was willing to pay to settle the case will return to Southwest.

Markow timely appealed the final judgment and the Rule 59 ruling; plaintiffs cross-appealed the denial of the full $3 million request. R1668; A212; R3026. The appeal, *inter alia*, repeated the misallocation complaint and the challenge to the reversion of $1.33M to Southwest. Markow also noted a late discovery of a conflict of interest of the lead class representative, who was a co-counsel with class counsel in another class action. After Markow filed his opening brief, Southwest supplemented the record in the district court, and revealed that Markow's accusations below were correct: of the 5.8 million coupons made "available" to the class, only 0.5 million were claimed, with an approximate resale value of $1.53 million. R3443; Dkt. 266-1.

A panel affirmed, rejecting these particular challenges on the premise that the class received complete relief. Slip op. 17-21. The panel agreed with Markow that class counsel had an unacceptable conflict of interest that it should have disclosed to the court, but restricted its sanction to a $30,000 reduction of fees and incentive awards because "the class is receiving full compensation." *Id.* at 23-28.

**Argument**

I.      **The holding that the class received "full compensation" is an error of either fact or law, and conflicts with Seventh Circuit holdings.**

The panel acknowledged that Markow raised legitimate concerns relating to the disproportion of fees to class relief (slip op. 17-20); the use of clear-sailing and reversion clauses (slip op. 20-21); and a class representative's failure to disclose a conflict of

interest (slip op. 23-28). But in each instance, the panel deemed that the settlement could be approved notwithstanding these problems because the settlement "actually makes the class whole." Slip op. 19-20. But the panel's premise—that the settlement "makes the class whole"—is either a mistake of fact or is a misapplication of Seventh Circuit law that creates a conflict.

True, the district court did find that "the class members are getting back exactly what they had before, an unexpired drink voucher." Slip op. 19. But the district court had no basis in the record to make that finding because the parties failed to disclose how many drink vouchers would be distributed to the class under the settlement until after the court approved the settlement and Markow filed his opening appellate brief.

Class counsel repeatedly represented to the district court and Seventh Circuit— and Southwest never disputed on appeal—that the loss to the class was 5.8 million drink vouchers. *E.g.*, R517; R524; R713; R720; Corrected Principal and Response Brief of Plaintiffs-Appellees at 1 (No. 13-3264 Dkt. 70). But there were claims for only 503 thousand drink vouchers under the settlement. R3443. Over 90% of the injury alleged by plaintiffs goes uncompensated; over two million Southwest fliers receive nothing.

The district court's and the appellees' error in saying that the class was made "whole," implicitly (though not explicitly) repeated by the panel, is basing the value of the settlement to the class on the value ostensibly made available to the class to claim. But the Seventh Circuit has soundly and repeatedly rejected that fiction, and holds that settlement benefits must be measured by what the class actually receives, rather than the maximum potential payment to the class. A claims-made settlement necessarily throttles the liability to a defendant compared to a direct distribution (or a common fund distributed *pro rata*). The two should not be treated as legally identical.

*Pearson v. NBTY, Inc.*, 772 F.3d 778 (7th Cir. 2014), is directly on point. In *Pearson*, the district court noted that the settlement made available $3.00 to 4.72 million class members; counted that full $14.2 million towards a total settlement value of $20.2

million; and approved the settlement based on those numbers. *Id.* at 780-81. *Pearson* rejected that analysis as a "fiction": only 30,245 claims were filed; even with *pro rata* augmentation, only $865,284 would be distributed to the class. *Id.*; *see also Eubank v. Pella Corp.*, 753 F.3d 718, 725-27 (7th Cir. 2014) (error for district court to accept estimate of settlement value that assumed all class members would make claims); *In re Baby Prods Antitrust Litig.*, 708 F.3d 163, 174, 179 (3d Cir. 2013) (reversing settlement approval where district court failed to "affirmatively seek out" claims data thereby allowing class counsel to be "the foremost beneficiaries of the settlement"); *In re MagSafe Apple Power Adapter Litig.*, 571 Fed. Appx. 560, 565 (9th Cir. 2014) (criticizing district court for "conduct[ing] the fairness hearing before the claims-submission period closed").

Appellants in *Pearson* did not argue that the total $5.4M value of the proposed *Pearson* settlement was inadequate, nor that a settlement that would pay $3 to each class member (and nearly $30 per claiming class member) would be insufficient relief or could be improved upon in litigation. Nor did they argue that the parties colluded; the word "collusion" appears nowhere in *Pearson*. But the low actual relief to the class combined with a disproportionate $4.5 million fee request and a reversion clause to defendant for any excessive fees, made the *Pearson* settlement approval reversible error—even though the district court scrutinized the fee application and cut it by over half. Especially in consumer class actions, "attorneys' fees awarded to class counsel should not exceed a third or at most a half of the total amount of money going to class members and their counsel." *Pearson*, 772 F.3d at 780-82, 786-87. "The parties could not have thought that the attorneys' fees that they agreed to pay class counsel, even if reduced by the district judge by almost one half, would be commensurate with the modest award to the clients, which is to say the class members." *Id.* at 782; *accord Redman*, 768 F.3d at 630-31.

As with the *Pearson* appellants, Markow is not arguing that there is a problem with the amount of the settlement. He is not arguing that the parties should have settled

for a total value of $12M or $22M instead of the $4.5M or so that they actually settled for, nor that settlement relief with an expiration date is unfair. The problem, as in *Pearson*, is one of allocation. Markow simply argues that it violates Rule 23(e) for a $4.5M settlement to allocate in a segregated fund two thirds of that money to the attorneys with no opportunity for the district court to reallocate that money to the class. *Redman*, 768 F.3d at 632; *Pearson*, 772 F.3d at 786-87; *see also Eubank*, 753 F.3d at 727, 729 (56% of value to attorneys so "one-sided[]" as to "flunk[] the 'fairness' standard").[2]

But the panel repeatedly focused on whether the settlement was "adequate." Slip op. 17-18. That's necessary, but not sufficient: a settlement may provide adequate relief compared to the litigation value of the claims, yet still violate Rule 23(e) because of an unfair allocation. *Redman*, for example, rejected an appellant's argument that the settlement inadequately valued class members' claims (768 F.3d at 632), but reversed settlement approval because the attorneys claimed an unfair proportion of the settlement value for themselves with a settlement structure that prevented district-court reallocation of fees to the class. 768 F.3d at 630-33. And in *In re Dry Max Pampers Litig.*, no one disputed that the underlying litigation was meritless and that any class recovery would be a windfall—but the fact that class counsel received $2.7 million while the class

---

[2] Markow values the drink vouchers at the market rate of $3; class counsel values them at the face value of $5. *See generally Redman*, 768 F.3d at 630-31 (coupons with an expiration date should not be valued at face value). The difference is immaterial in this particular case, because $3M in segregated fees outstrips the value of the class relief whether the 503 thousand vouchers are valued at $1.5M or $2.5M.

That the district court based its fee determination on § 1712(b) lodestar in this case rather than a percentage of recovery does not matter for allocational settlement fairness under Rule 23(e): "hours can't be given controlling weight in determining what share of the class action settlement pot should go to class counsel. The judge could start with hours but couldn't rightly stop there." *Redman*, 768 F.3d at 635 (rejecting argument that § 1712(b) determination could save oversized fee award).

got illusory relief presented an unfair allocation that required reversal of settlement approval. 724 F.3d 713 (6th Cir. 2013).

The panel did not dispute that the settlement was structured to give class counsel a disproportionate award compared to class relief. Slip op. 18-20. But the panel held the argument had "little force" because the settlement "makes the class whole." *Id.* 19-20. It similarly found no reversible error from other problematic settlement provisions and class counsel behavior because of the same premise that the class was made whole. *Id.* 21 and 27. Markow made two arguments why this premise was not true and the class was not made whole: the class waived monetary claims made in the complaint for no monetary relief; and over 90% of the class received nothing under the claims process. Markow Reply and Response Br. 15-18. The panel considered only the first of these two arguments. Slip op. 20. Thus, a statement like "No class members have legitimate or even plausible claims to more than they will receive under the settlement" makes the mistake of disregarding the millions of class members that will receive zero under the settlement, though their claims are (by definition from the class certification) identical to the claims of the class members receiving vouchers.

Perhaps the panel meant that *claiming* class members had no claim on anything more than the individual drink vouchers they received in the settlement? But that is no exception to *Pearson*'s command to compare fees demanded to actual class relief. The claiming class members in *Pearson* averaged over $28 of benefit in the settlement because of *pro rata* augmentation of the low number of claims, and no one asserted that the underlying litigation entitled those claiming class members to more than $28. It matters to settlement fairness whether there are 30,000 claims or 503,000 claims or 5,800,000 claims, and the district court erred in failing to consider the claims rate at all. Ignoring the low claims rate is an error of fact and law that conflicts with *Pearson, Redman,* and *Eubank.*

**II.    The panel's holding that the class was not prejudiced by the reversion of over $1.3 million to Southwest is erroneous and conflicts with Seventh Circuit law.**

The district court felt the $3 million Rule 23(h) request excessive, and cut it over 45%; the panel cut it a tad further. Slip op. 5, 28. But because of the reversion clause, rather than the excess flowing to the class, Southwest got to keep over $1.3 million that it was willing to pay to ensure settlement of the case. Yet the panel held this breach of fiduciary duty that cost the class over a million dollars acceptable. Whether or not "the class was made whole," the panel's rejection of Markow's argument protesting the combination of clear sailing and reversion to Southwest was by itself independent error that conflicts with Seventh Circuit law.

"One possible solution, in a case in which the agreed-upon attorneys' fee is grossly disproportionate to the award of damages to the class, is to increase the share of the settlement received by the class, at the expense of class counsel." *Redman*, 768 F.3d at 632; *Pearson*, 772 F.3d at 786. This is exactly what Markow requested here, where the attorneys requested $3M, and the class received coupons worth approximately $1.5M. But "[t]his route is barred unless the judge invalidates the kicker clause." *Pearson*, 772 F.3d at 786.

Southwest, for whatever reason, thought it worth about $4.5M to settle this litigation. But the attorneys reserved two thirds of that settlement value for themselves through clear sailing and a segregated fee fund. Thus, when the district court reduced the excessive fee request and the panel reduced it further, $1.36 million ultimately reverted to Southwest. Class counsel's selfish breach of fiduciary duty cost the class over $1.3M of the settlement value Southwest put on the case.

Now perhaps some, most, or even all of that $4.5 million was Danegeld rather than part of the litigation value of these claims, but, under Rule 23(e), the windfall should not go solely to the lawyers. The class should be entitled to a proportional share. The alternative would create a perverse incentive to bring relatively low-merit class

actions. If class counsel can win for itself a disproportionate allocation and avoid scrutiny of self-dealing terms or the claims process simply by arguing that the class's claims were weak and that the class was not entitled to any more than the relief it received (as the panel held here), it becomes more profitable to bring weak class actions than meritorious class actions where the ultimate settlement allocation would receive greater scrutiny because of the risk of class members losing valuable claims. Instead, any hypothetical overpayment of settlement value relative to alleged nuisance litigation value must be proportionately shared between the class and class counsel to avoid the perverse incentives created by the panel's implicit holding that a class is not prejudiced when the settlement recovery is adequate for claiming class members—no matter how much is surrendered in the kicker, no matter how many class members collect nothing.

If there had been a single common fund, and Southwest offered to put $4.5M in it, and class counsel had responded by asking Southwest to pay only $3.2M, that would be self-evident malpractice. Why is it not a *per se* breach of fiduciary duty when class counsel effectively says "Instead of $4.5M, pay $1.5M, and then we will have a *de facto* free roll of whether we receive an excessive $3M or something smaller"? Thus, *Eubank* suggests that reversions should be required to be "delete[d]." 753 F.3d at 723. In *Pearson*, the Court went even further, suggesting that kicker clauses are *per se* grounds to reject a settlement because the Court could not "think of a justification for a kicker clause," concluding that "at the very least, there should be a strong presumption of its invalidity." *Pearson*, 772 F.3d at 787.

The panel was less troubled by the reversion clause because "it is hard to imagine the class receiving any better result after further negotiations or a trial." Slip op. 21. That conflicts with the easy-to-imagine "better result" that Markow, *Pearson*, *Redman*, and *Eubank* suggested: reject the settlement until the parties delete the kicker and allow any reversion to go to the class. Southwest was willing to forgo challenge to a $3 million award from its own pockets, so there is no penalty to the defendant for doing

so. It is just as easy to mail class members a coupon and a $2.60 check (or ten coupons and a $26 check) as it is to mail a coupon. In a worst-case scenario, if reversion money truly "can't feasibly be awarded" to the class, there could be random lottery to selected class-member claimants, *cy pres*, or escheat to the U.S. Treasury as a last resort. *Pearson,* 772 F.3d at 784; *Ira Holtzman, C.P.A., & Assocs. v. Turza,* 728 F.3d 682, 689-90 (7th Cir. 2013); Shay Lavie, *Reverse Sampling: Holding Lotteries to Allocate the Proceeds of Small-Claims Class Actions,* 79 GWU L. REV. 1065 (2011); 28 U.S.C. § 2042.

The panel was also less troubled by the reversion clause because "the district court carefully scrutinized—and significantly reduced—the fee request" in response to Markow's objection. Slip op. 21. This seems a *non sequitur*, and one that ensures settling parties can always defend a reversion clause. If a district court finds a fee request reasonable, then the parties will argue that the reversion clause had no effect and should not disturb the fairness of a settlement; if a district court reduces the fee request, then settling parties will cite the *Southwest* panel opinion and the fee reduction to show that the clear-sailing clause did not shield the fee request from scrutiny. The panel opinion eviscerates the *Pearson/Redman/Eubank* line of cases demanding the deletion of reversion clauses. When will reversion clauses ever violate Rule 23(e), except when a court is already inclined to reject a settlement?

The need for a rule enforcing the *Pearson/Redman/Eubank* prohibition on reversion clauses becomes apparent in the scenario where no objectors show up. Class counsel selfishly attempted to shield its excessive fee request from scrutiny. A non-profit public-interest objector foiled that objective in this case, but the only beneficiary was Southwest. Markow's successful objection thus created no benefit for the class, and does not entitle him to fees. *Cf. Pearson*, 772 F.3d at 786 (criticizing segregated fund as an abusive "gimmick" to defeat standing of objectors to challenge fees). The lack of pecuniary reward is of little concern to Markow's non-profit attorneys, but there are many more settlements with abusive fee requests than there are non-profit counsel to

police them. If class counsel know they can deter for-profit objectors with reversion clauses that prevent objectors from benefiting from successful objections to abusive fee requests, class counsel in future cases will have every incentive to include the abusive clauses in their settlements and then hope no non-profit objectors show up. When none do, the settling parties can tell district courts in an *ex parte* proceeding that *Southwest* permits the court to approve the settlement notwithstanding the kicker (or even an oversized fee request) because there is no *per se* rule against reversion clauses.

If nothing else, the panel decision conflicts with *Redman*: a kicker in conjunction with clear sailing should receive "intense critical scrutiny by the district court." 768 F.3d at 637. There is no dispute that the district court entirely failed to consider the kicker in evaluating settlement fairness, and thus applied the wrong legal standard.

The segregated fee combined with clear-sailing here is more than "questionable"; it was self-dealing that breached class counsel's fiduciary duties when it actually deprived the class of over $1.3 million when the district court and panel each reduced the cut of class counsel's money from the segregated fund that Southwest was willing to put on the table to settle the case. The panel's acceptance of this result is an error of law that conflicts with Seventh Circuit precedent and requires rehearing.

**III.    The panel's premise that "Southwest had no incentive to insist on a stringent claims process" is unsupported by the record and contradicts common sense.**

In the course of discussing the adequacy of the settlement, the panel stated:

> There is also a happy alignment of interests between class members and Southwest. Southwest has no incentive to insist on a stringent claims process. Every replacement coupon can be used only by a customer who buys a plane ticket. Southwest should benefit from every one that is actually used. Such benefits for a defendant under a coupon settlement are usually a reason for caution if not

> skepticism. This case is different, though, because Southwest would
> have received the same benefits from the old coupons.

Slip op. 17-18. To the extent this premise was material to the panel's decision, it is a

ground for rehearing as an error of fact unsupported by the record and contradicted by

both common sense and Southwest's own revealed profit-maximizing preferences.

Reasoning that "Southwest has no incentive to insist on a stringent claims

process" presupposes that drink vouchers are collectively a profitable marketing tool

for Southwest. But neither appellee ever made that claim, and there is nothing in the

record to support it. Rather, the opposite is true: the suit arose because Southwest

modified its drink voucher program. If every drink voucher was profitable, then

Southwest would have had no incentive to modify the program in the first place, or to

resist plaintiffs' initial complaint about the institution of expiration dates. If the panel's

analysis is correct, Southwest is being economically irrational for not willy-nilly direct-

mailing drink vouchers to all class members—indeed, to all Americans—rather than

providing them solely as a one-time benefit for those buying a higher-priced ticket.

At the margin, of course, there is *some* infinitesimal fraction of customers who

will switch from American or United to Southwest because of the opportunity to use a

drink voucher. And those additional customers at the margin will partially offset the

total cost to Southwest of the drink voucher settlement. But the vast majority of people

who use drink vouchers would have chosen to fly Southwest anyway, be it because

they're locked in to the frequent-flyer benefits program; they prefer Southwest's service

or itineraries or lack of add-on fees; Southwest is the low-cost low-frills provider—or

because they got on Ebay and purchased a drink voucher from a class member for $3

after they already purchased a plane ticket. For those customers, the drink voucher is

pure cost to Southwest. Southwest's revealed preference—whereby they paid for an

expensive claims process instead of agreeing to a settlement with direct distribution to

everyone provided notice—shows that **Southwest** does not think it's profitable to

maximize distribution of drink vouchers. If Southwest is not being economically irrational in its profit-maximizing decision, then the panel erred in assuming without record support that the claims process was not designed to reduce Southwest's total expense.

Yes, the claims process here is not as arduous as those complained of in *Pearson* or *Eubank*—but that's why the claims rate is 8.6% rather than 0.3%. That the parties used only one mechanism to throttle claims rather than three or four does not mean that claims were not artificially throttled. Markow is not arguing that the settlement is inadequate because the parties agreed to a claims process that rewarded only 8.6% of the claims rather than a direct distribution of 100% of the claims. A settlement is a compromise, and parties can structure a settlement to provide less than complete relief—as done here where over 90% of the 5.8 million claims for invalidated coupons class counsel asserts are waived without benefit. The parties can compromise for $4.5 million in total settlement benefit rather than the tens of millions of dollars (or 5.8 million vouchers) of damages alleged by class counsel. But once the class attorneys do compromise the class's claims, they have a duty to not structure the settlement to tilt a disproportionate share of the relief to themselves. Here, that duty was breached, and the resulting allocation—$1.7 million to class counsel, $1.5 million of vouchers to the class, and $1.3 million reverting to Southwest—violates Rule 23(e).

To the extent the panel's reasoning relied on the mistaken premise that Southwest had an incentive to maximize the number of vouchers issued in the settlement, it is grounds for rehearing.

## Conclusion

The panel premised multiple conclusions on the factually and legally erroneous finding that a settlement that actually paid only 8.6% of the potential claims "made the class whole." This contradicts Seventh Circuit law holding that it is the actual recovery,

not the maximum potential recovery, that matters for evaluating settlement fairness. If not for that legal finding contrary to *Pearson*, the panel would have reached different conclusions regarding the disproportionate fees; the kicker; and class counsel's attempt to hide the class representative's conflict of interest.

And even if one were to disregard *Pearson* and maintain that the settlement "made the class whole," there is no dispute that Southwest was willing to pay at least $1.3 million more to settle the case, and class counsel's self-serving use of the reversion clause put the money back in Southwest's pocket, and thus unfairly prejudiced the class. Permitting this prejudicial breach of fiduciary duty independently conflicts with multiple Seventh Circuit decisions demanding that courts insist on deletion of kickers.

Rehearing or rehearing *en banc* is thus appropriate to reconcile each of these two independent conflicts with Seventh Circuit law.

The panel was perhaps untroubled by the low claims rate because of its belief that Southwest had the incentive to maximize the number of vouchers the settlement distributed. That premise is factually incorrect because it is unsupported by the record and is inconsistent with Southwest's actions if Southwest is a rational economic actor, and provides an independent ground for rehearing.

Dated: August 27, 2015                 Respectfully submitted,

/s/ *Theodore H. Frank*
Theodore H. Frank
Melissa A. Holyoak
CENTER FOR CLASS ACTION FAIRNESS
1718 M Street NW, No. 236
Washington, DC 20036
Telephone: (703) 203-3848
Email: tfrank@gmail.com
*Attorneys for Appellant Gregory Markow*

**Certificate of Compliance**

**with Fed. R. App. 32(a)(7)(C)**

Certificate of Compliance with Type-Volume Limitation, Typeface Requirements, Type Style Requirements, and Appendix Requirements:

1.      This brief complies with the type-volume limitation of Fed. R. App. Proc. 35(b)(2) because:

This brief is 15 pages, excluding the parts of the brief exempted by Fed. R. App. Proc. 32(a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

This brief has been prepared in a proportionally spaced typeface using Microsoft Word 2013 in 12-point Palatino Linotype font.

Executed on August 27, 2015.

/s/ *Theodore H. Frank*
Theodore H. Frank
Center for Class Action Fairness
1718 M Street NW, No. 236
Washington, DC 20036
Telephone: (703) 203-3848
Email: tfrank@gmail.com

*Attorney for Appellant Gregory Markow*

**Certificate of Service**

I hereby certify that on August 27, 2015, I electronically filed the foregoing with the Clerk of the United States Court of Appeals for the Seventh Circuit using the CM/ECF system, thereby effecting service on counsel of record who are registered for electronic filing under Cir. R. 25(a).

*/s/ Theodore H. Frank*
Theodore H. Frank